UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| WILMA JEAN WEST,<br><br>    **Plaintiff,**<br><br>V.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    **Defendant.** | CIVIL ACTION NO. 5:14-69-KKC<br><br><br><u>MEMORANDUM OPINION<br>AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment (DE 9; DE 10). Plaintiff Wilma Jean West brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

**I. OVERVIEW OF THE PROCESS**

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an

> impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

West filed her claim for DIB on March 21, 2011, alleging an onset date of December 10, 2010. (Tr. at 174.) The agency denied her application initially and on reconsideration. (Tr. at 93, 110.) West requested review by an ALJ, and a hearing was held on November 1, 2012. (Tr. at 29–78.) The ALJ subsequently issued an unfavorable decision on December 7, 2012. (Tr. at 10–24.)

At the time the ALJ rendered her decision, West was fifty-one years old. West completed her GED and had previously worked as a pharmacy technician, a housekeeper at a nursing home, a dispatcher, a meter reader, and a meter reader supervisor. (Tr. at 22.) She alleges disability due to osteoarthritis, fibromyalgia, depression, high cholesterol, hypothyroidism, and hypertension. (Tr. at 122.) West's insured status expires on March 31, 2015. (Tr. at 15.)

At the first step, the ALJ determined that West has not engaged in substantial gainful activity since her alleged onset date of December 10, 2010. (Tr. at 15.) At the second step, the ALJ found that West suffers from the following severe impairments: "fibromyalgia, osteoarthritis, status past multiple fractures in motor vehicle accident, and depression." (Tr. at 15.) At the third step, the ALJ concluded that West does not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments. (Tr. at 16.)

Next, the ALJ reviewed the record to determine West's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding West's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1196 WL 374186 (July 2, 1996). After reviewing all of the evidence, the ALJ determined

that West has the RFC to perform light work with the following limitations: never climb ropes, ladders, or scaffolds; no more than frequently climb ramps or stairs; no more than occasionally stoop, kneel, crouch, or crawl; avoid concentrated exposure to hazards; and no more than occasionally interact with the general public. (Tr. at 17.)

The ALJ continued to the fourth step. The ALJ asked the vocational expert ("VE") whether a hypothetical individual with West's education, experience, and RFC could perform any of West's previous jobs. (Tr. at 71.) The VE testified that this hypothetical individual could not perform the past relevant work. (Tr. at 22, 71.) Thus, the ALJ moved to the fifth step. The ALJ asked if this hypothetical individual could adjust to other work and the VE noted that this hypothetical individual could perform a number of unskilled jobs requiring a light level of exertion, including bench work and assembly or packaging and sorting jobs. (Tr. at 72–73.) Therefore, the ALJ found West not disabled. (Tr. at 23.)

The ALJ's decision that West is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied West's request for review on January 31, 2014. (Tr. 1–4.) West has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts

4

in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**IV. ANALYSIS**

West presents four issues for review. First, she argues that the ALJ erred in finding severe impairments resulting from a motor vehicle accident without incorporating any associated limitations in her RFC. Second, West asserts that the ALJ relied upon improper medical opinions. Third, she contends that the ALJ erred in failing to discuss the weight given to the opinion of Dr. Ford.[1] And fourth, West argues that the ALJ failed to adhere to the Social Security Ruling outlining the proper procedure for evaluating claims that include a diagnosis of fibromyalgia.

1. *The ALJ did not err in establishing West's RFC.*

RFC is an administrative finding of an individual's ability to perform work-related activities, and establishing the claimant's RFC is a decision reserved for the Commissioner. *See* 20 C.F.R. § 404.1545(a); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (holding that RFC is not meant to describe physical maladies, but residual abilities). The Commissioner's

---

[1] Because the second and third issues both concern West's disagreement with the ALJ's method for evaluating medical opinion evidence, the Court will address the second and third issues simultaneously.

5

assessment is based upon all of the relevant medical evidence and other evidence in the record, including the claimant's testimony. 20 C.F.R. § 404.1545(a)(3). Medical evidence that establishes a severe impairment, however, "may or may not affect [the claimant's] functional capacity to do work." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004); *see also Guy v. Comm'r of Soc. Sec.*, No. 11-12828, 2013 WL 1148413, at *4 (E.D. Mich. Feb. 19, 2013) ("Just as the law is clear that a finding of a severe impairment at step [two] is not necessarily inconsistent with an RFC that does not impose limitations based on that particular impairment, the law in this Circuit is equally clear that not all impairments deemed 'severe' in step two need be included in the hypothetical.") (citations and internal quotation marks omitted). Rather, "[t]he regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Griffeth*, 217 F. App'x at 429.

West argues that the ALJ erred in failing to incorporate the effect of multiple fractures suffered during a motor vehicle accident into West's RFC. She notes that the ALJ found the fractures to be "severe impairments," and therefore argues that the ALJ was required to include the effect of the fractures on her ability to perform basic work activities.

West's argument, however, is unavailing. The ALJ is *not* required to incorporate all "severe impairments" in her RFC assessment. *Griffeth*, 217 F. App'x at 429; *see also* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (noting that medical limitations may overlap but that a claimant's RFC should reflect the most an individual can do despite all limitations factored together). But here, the ALJ did discuss the effect of West's fractures. The ALJ noted that during a visit in November 2011—merely three months after the accident—"Dr. Goldfarb concluded that, considering the claimant's physical trauma in the

6

motorcycle accident, she was doing well." (Tr. at 20.) Overall, the ALJ concluded that "[t]he claimant's symptoms apparently worsened as a result of [the motor vehicle] accident but were not of the severity to preclude light work for a continuous period of twelve months." (Tr. at 21.) The ALJ concluded that the past fractures did not *further* limit West's ability to perform work-related activities.

Accordingly, the ALJ's decision not to include further limitations in West's RFC due to the fracture is supported by substantial evidence and applies the correct legal standards. *See Lindsley*, 560 F.3d at 604.

2. *The ALJ did not err in evaluating the medical opinion evidence.*

The ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. § 404.1527(d). But not all medical opinions are treated equally.

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source'), and an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a 'nontreating source').

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)). Medical opinions, including examining and treating source opinions, are not afforded weight unless the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Further, every medical opinion is evaluated for supportability and consistency. 20 C.F.R. § 404.1527(c). The ALJ will give more weight to medical opinions that provide more thorough supporting explanations and that are more consistent with the record as a whole.

7

*Id.* Importantly, the ALJ must evaluate the record as a whole in connection with "other sources" including testimonial and anecdotal evidence. *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513).

Finally, the ALJ considers every medical opinion in the record, but the ALJ does not have to *discuss* every medical opinion in her notice of decision. The ALJ must "always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion," 20 C.F.R. § 404.1527(c)(2); "[h]owever, this requirement only applies to *treating* sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (emphasis in original). The ALJ is not required to explain the amount of weight given to nontreating source opinions. *See id.*; *see also Gayheart*, 710 F.3d at 376 ("[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'")

West objects to the ALJ's reliance on examining physician Dr. Mast and nonexamining physicians Dr. Ramsey and Dr. Saranga. West further argues that the ALJ should have afforded greater weight to Dr. Ford. But neither Dr. Mast, Dr. Ramsey, Dr. Saranga, nor Dr. Ford acted as West's treating physician. Therefore, the ALJ was not required to discuss the weight she gave to these medical opinions and properly analyzed these medical opinions in relation to all the record evidence.

The ALJ accorded "great weight" to Dr. Mast's opinion. (Tr. at 21.) Dr. Mast concluded that West has "a mild level of limitation in job-related activities and a mild level or limitation in the activities of daily living." (Tr. at 333.) Although Dr. Mast examined West before West's motor vehicle accident, the ALJ found Dr. Mast's opinion consistent with the medical, testimonial, and anecdotal evidence of West's capabilities before and after the accident. (Tr. at 21.) For example, the ALJ noted that, two months after West's

accident, she self-reported that she goes grocery shopping for about forty-five minutes each week, (Tr. at 21, 234) and, less than two weeks after West's accident, she stated that her elbow did not bother her much and Dr. Bruce found "full range of motion of the right knee." (Tr. at 435.)

The ALJ also accorded "great weight" to the opinions of Dr. Ramsey and Dr. Saranga. (Tr. at 21.) Dr. Ramsey reviewed West's records on August 23, 2011 and concluded that West could work at a light exertional level consistent with the ALJ's RFC determination. (*See* Tr. at 87–89.) Dr. Saranga reviewed West's records on December 1, 2011 and came to a similar conclusion. (*See* Tr. at 104–07.) Importantly, Dr. Saranga also reviewed West's accident-related medical records and concluded that, as a result of the accident, West had "a lot of soreness generally related to all the bruising" but that she "is expected to continue to improve to the assessed limitations within one year from" the accident. (Tr. at 106.) The ALJ explicitly found these opinions to be consistent with the medical, testimonial, and anecdotal evidence in the record. (Tr. at 21.)

The ALJ did not discuss what, if any, weight she afforded Dr. Ford's opinion. (*See* Tr. at 17–22.) Dr. Ford only examined West once. (*See* Tr. at 1133–40.) West's attorney referred her to Dr. Ford, and Dr. Ford stated that "today's visit was only for an assessment and did not constitute an ongoing treatment arrangement." (Tr. at 1133.) Therefore, Dr. Ford was not a treating source. *See* 20 C.F.R. § 404.1502 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."). Accordingly, the ALJ was required to evaluate Dr. Ford's opinion but not required to explain the weight given to Dr. Ford's opinion in the ALJ's notice of decision. *Ealy*, 594 F.3d at 514.

Therefore, the ALJ applied the correct legal standard for evaluating the medical opinions of Dr. Mast, Dr. Ramsey, Dr. Saranga, and Dr. Ford. *See Lindsley*, 560 F.3d at 604.

3. *The ALJ did not err in analyzing West's fibromyalgia.*

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. [Fibromyalgia] is a common syndrome." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). "[I]n many cases where a claimant bases an allegation of disability on a diagnosis of fibromyalgia, difficulty arises over the lack of objective findings, because that ailment is difficult to correlate with objectively observable, physical manifestations." *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013). "But a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." *Id.*

The Social Security Administration issued a ruling on July 25, 2012 ("the Ruling") to clarify the criteria for finding a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The Ruling noted three diagnostic criteria. A claimant has a medically determinable impairment of fibromyalgia if the claimant has the following: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms or co-occurring conditions; and (3) evidence that other disorders did not cause the repeated manifestations associated with the claimant's fibromyalgia. *Id.*, at *3. Then, if the ALJ determines that the claimant's fibromyalgia constitutes a "severe impairment," the ALJ will assess the extent that the claimant's fibromyalgia affects his or her exertional limitations. *Id.*, at *6; *see also Stankoski*, 532 F. App'x at 619 (noting that the ALJ uses the same process to assess all severe impairments, including fibromyalgia, and that the ALJ must analyze all objective medical evidence to determine a claimant's RFC).

10

Here, West asserts that "[t]he ALJ erred in failing to consider whether Ms. West would meet or equal SSR 12-2p." (DE 9-1 at 14.) West fails to identify, however, how the ALJ failed to adhere to the Ruling's requirements. The ALJ followed the Ruling's criteria for determining that West's fibromyalgia constituted a severe impairment (*see* Tr. at 15), and then the ALJ analyzed West's fibromyalgia—and her other impairments—with all the record evidence to determine West's RFC. (*See* Tr. at 17–22.) Thus, the ALJ applied the correct legal standard for evaluating West's fibromyalgia. *See Lindsley*, 560 F.3d at 604.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 9) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 10) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated this 16th day of December, 2014.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY